```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION

Benjamin Laws, Jr., et al.,    :

          Plaintiffs,          :

     v.                        :    Case No. 2:12-cv-544

Stevens Transport, Inc.,       :    JUDGE GREGORY L. FROST
et al.,                             Magistrate Judge Kemp

          Defendants.          :
```

OPINION AND ORDER

This is a personal injury case arising out of a motor
vehicle accident which occurred on June 4, 2010. According to
the parties, the accident occurred in Lima, Ohio when plaintiff
Benjamin Laws' rental car and a truck owned by defendant Stevens
Transport and driven by defendant Charles G. Dunn, III collided.

Pursuant to this Court's direction following a telephonic
discovery conference held on February 7, 2013, defendants Stevens
Transport, Inc., Stevens Transport CD, Inc., Stevens Transport T
L, Inc., and Charles G. Dunn III (collectively "defendants")
filed a "Motion Opposing Plaintiff Chandra Laws' First Set of
Interrogatories to Defendant Stevens Transport, Inc. and Motion
to Strike Certain 'Areas of Inquiry' Set Forth in Plaintiffs'
30(b)(6) Deposition Notice." (Doc. #46). Plaintiffs Benjamin
Laws, Jr. and Chandra Laws filed a "Motion to Compel Discovery
Regarding Preventable Accident Determination/Investigation and
Remedial Training/Discipline." (Doc. #47). The motions are ripe
for consideration.

The first issue the parties address is whether Chandra Laws'
interrogatories should be stricken on the ground that they exceed
the maximum number allowable under Fed. R. Civ. P. 33(a). The
second issue is whether Fed. R. Evid. 407 bars discovery
pertaining to Mr. Dunn's post-accident remedial training and

discipline.  Finally, the Court will determine whether plaintiffs should be denied discovery pertaining to post-accident investigations and "preventability" determinations on the ground that the information is protected by the attorney-client privilege.

I. <u>Plaintiff Chandra Laws' First Set of Interrogatories</u>

In January 2013, plaintiff Chandra Laws served the following first set of interrogatories on defendant Stevens Transport, Inc.:

<u>INTERROGATORY NO. 1:</u> Identify each person who participated in the determination or investigation of the subject occurrence being a preventable accident as described by Dunn in his deposition at pg. 53-56.

<u>INTERROGATORY NO. 2:</u> Identify each document created in connection with the determination or investigation of the subject occurrence being a preventable accident as described by Dunn in his deposition at pg. 53-56.

<u>INTERROGATORY NO. 3:</u> Identify each person who was involved in remedial training provided to Dunn as a result of the subject occurrence as described by Dunn in his deposition at pg. 41-49.

<u>INTERROGATORY NO. 4:</u> Identify each document created or provided to Dunn in connection with the remedial training provided to Dunn as a result of the subject occurrence as described by Dunn in his deposition at pg. 41-49.

<u>INTERROGATORY NO. 5:</u> Identify each person within Stevens Transport who met with Charles Dunn as a result of the subject occurrence as described by Dunn in his deposition at pg.40-49.

<u>INTERROGATORY NO. 6:</u> Identify each document created in connection with meetings between Dunn and employees/representatives of Stevens Transport as described by Dunn in his deposition at pg. 40-49.

(Doc. #46, Ex. 1).  Defendants argue that these interrogatories should be stricken because they exceed the maximum allowable

number of interrogatories under Fed. R. Civ. P. 33(a) when
combined with the interrogatories served by plaintiff Benjamin
Laws, Jr. (Id. at 2-3). In particular, defendants assert that
plaintiffs Chandra Laws and Benjamin Laws, Jr. "should be treated
as a single, unified entity" for discovery purposes, and
plaintiff Chandra Laws should not be entitled to serve a separate
set of interrogatories. (Id. at 3). Defendants claim that
plaintiffs should be treated this way because "Chandra Laws has
asserted merely a derivative loss of consortium claim." (Id. at
4).

Fed. R. Civ. P. 33(a)(1) provides, in pertinent part,
"[u]nless otherwise stipulated or ordered by the court, a party
may serve on any other party no more than 25 written
interrogatories, including discrete subparts." Although Fed. R.
Civ. P. 33(a)(1) allows 25 written interrogatories per party, as
opposed to per side, in some instances nominally separate parties
are considered one party for purposes of the 25-interrogatory
limitation. See Vinton v. Adam Aircraft Indus., Inc., 232 F.R.D.
650, 664 (D. Colo. 2005) (quoting 8A Wright, Miller and Marcus,
Federal Practice and Procedure, Civil 2d §2168.1).

It is within this Court's broad discretion to determine the
proper scope of discovery, including the number of
interrogatories any party may serve. See Karl v. Bizar, No.
2:09-CV-34, 2009 WL 3418676, at *2 (S.D. Ohio Oct. 19, 2009).
Here, the Court finds that an application of the plain language
of Fed. R. Civ. P. 33(a)(1) is warranted. The same result was
reached in Auther v. Oshkosh Corp., No. 09-CV-00527, 2010 WL
1404125, at *3-4 (W.D.N.Y. Mar. 30, 2010), a case in which a
plaintiff husband brought negligence and products liability
claims for injuries he sustained from an exploding tire on a
military vehicle, and his wife brought a claim for loss of
consortium based on the same incident. While acknowledging that

-3-

both the husband and wife brought claims arising from the same
incident, the court determined that they should be considered
separate parties for purposes of the 25-interrogatory limitation.
Id.  Hence, the parties were found to be more than nominally
separate parties for purposes of determining the appropriate
number of interrogatories.  Id.  Here, as in Auther, plaintiffs
Benjamin Laws, Jr. and Chandra Laws have asserted claims that are
sufficiently distinct so as to allow them to be considered
separate parties for purposes of the 25-interrogatory limitation.
Even were that not so, it does not appear that defendants will be
unduly burdened by having to answer these particular
interrogatories.  Consequently, the Court, in its discretion,
will deny defendants' motion to strike the interrogatories of
Chandra Laws on the ground that they exceed the maximum allowable
number under Fed. R. Civ. P. 33(a).

    II. <u>Requests for Re-Training and Discipline Information</u>

    Defendants likewise seek to strike Chandra Laws'
interrogatory nos. 3-6 on the ground that they "improperly seek
discovery relating to Defendant Dunn's post-accident remedial
training." (Doc. #46 at 5).  Defendants also contend that
"Plaintiffs' 30(b)(6) deposition notice to Defendants' corporate
representatives . . . improperly requests discovery regarding,
among other things, the post-accident training (including any re-
training or remedial training) of Defendant Dunn." Id.
Defendants argue that post-accident personnel actions, such as
counseling and supplemental training, are subsequent remedial
measures under Fed. R. Evid. 407 and are inadmissible to prove
negligence or culpable conduct. Id. at 5-6.  Consequently,
defendants argue that the information sought is not discoverable
on the grounds that it is irrelevant to the liability issues and
constitutes inadmissible evidence at trial.

    In the motion to compel, plaintiffs argue that they are

-4-

entitled to discovery relating to the remedial training and discipline of Mr. Dunn after the accident. (Doc. #47 at 1-2). Plaintiffs state that defendants "employ the wrong standard" in seeking to avoid the discovery by requesting "that the Court make an evidentiary ruling without allowing [them] the opportunity to develop what evidence would be through discovery." Id. at 4. Further, the plaintiffs contend that the re-training and discipline information sought is discoverable because it is reasonably calculated to lead to the discovery of admissible evidence under Fed. R. Civ. P. 26(b)(1). Id.

The liberal discovery policies of the federal courts are based upon a desire for full disclosure before trial. See Vardon Golf, Co., Inc. v. BBMG Golf Ltd., 156 F.R.D. 641, 650 (N.D. Ill. 1994). Consequently, evidence which may be inadmissible at trial may still be discoverable if the information appears to be reasonably calculated to lead to the discovery of admissible evidence. See id. Stated another way, "[t]he touchstone of the relevancy of documents is not whether the discovery is evidence that is, or even may be, admissible at trial, but rather whether the discovery is 'reasonably calculated to lead to the discovery of admissible evidence.'" Sonnino v. University of Kansas Hosp. Auth., 220 F.R.D. 633, 646 (D. Kan. 2004)(quoting Fed. R. Civ. P. 26(b)(1)).

Fed. R. Evid. 407 provides that when measures are taken that would have made an earlier injury or harm less likely to occur, evidence of those subsequent measures is not admissible to prove negligence or culpable conduct. Even if the re-training and discipline of a driver involved in an accident are subsequent remedial measures under Fed. R. Evid. 407, discovery of such evidence may still be permitted because Fed. R. Evid. 407 does not require the exclusion of evidence that is offered for another purpose, "such as impeachment or – if disputed – proving

-5-

ownership, control, or the feasibility of precautionary
measures." Fed. R. Evid. 407. It is certainly possible that
plaintiffs will wish to use this evidence for one of these
purposes – but they will not know that until they take discovery
on the issue. Because Fed. R. Evid. 407 governs the
admissibility of evidence and does not control pretrial
discovery, the objections to discovery based on this evidentiary
rule will be overruled. See Bernat v. California City, No. 1:10-
cv-00305, 2010 WL 4008361, at *5 (E.D. Cal. Oct. 12, 2010)
(stating that "though the evidence discovered may not,
ultimately, be admitted at trial, this is no basis for refusing
to disclose it during discovery").

III. Requests for Investigations and
"Preventability" Determinations

Next, defendants assert that plaintiffs should be denied
discovery pertaining to "post-accident actions, including
internal audits, safety review determinations and
'preventability' determinations" because that information is
protected by the attorney-client privilege. (Doc. #46 at 10-15).
Defendants state that defense counsel:

> was retained within hours of the June 4, 2010 accident to
> undertake an investigation of this personal injury
> accident in anticipation of possible litigation. Defense
> counsel immediately undertook an investigation to assess
> liability and damages. Thereafter, any internal
> investigation conducted by or on behalf of Stevens
> Transport, Inc., including 'preventability'
> determinations enabled defense counsel to give sound
> legal advice. It is precisely for this reason that
> defense counsel was retained.

Id. at 11. On this basis, defendants claim that the information
sought is protected by the attorney-client privilege. Id.

In the motion to compel, plaintiffs argue that defendants'
claim of privilege is wholly without merit. (Doc. #47 at 5).
Plaintiffs state that there is no claim that defense counsel was

-6-

involved in "the determination/investigation of the subject collision being a preventable accident. . . ." Id. Rather, plaintiffs assert that the investigation and related preventability determinations were undertaken in the normal course of business in accordance with the Federal Motor Carrier Safety Regulations. Id. at 6. Thus, according to plaintiffs, "[t]hat [d]efendants had retained counsel with respect to the subject collision is of no consequence, and provide [sic] no protection." Id. at 6.

The burden of establishing the protection of the attorney-client privilege rests with the person or entity asserting it. See United States v. Dakota, 197 F.3d 821, 825 (6th Cir. 1999). Like all privileges, the attorney-client privilege is to be construed narrowly because it operates in derogation of the truth-seeking process. See United States v. Nixon, 418 U.S. 683, 710 (1974). In this case, the question is whether an internal investigation of the accident, including a "preventability" determination, which defense counsel claims "enabled" him "to give sound legal advice" can be protected from disclosure based upon the attorney-client privilege. (Doc. #46 at 11).

A similar issue arose in Byrd v. Wal-Mart Transp., LLC, No. CV609-014, 2009 WL 3055303, at *1 (S.D. Ga. Sept. 23, 2009), which involved a fatal accident between a Wal-Mart tractor-trailer and a minivan. The court explained that "due to the severity of the accident," counsel became involved "immediately." Id. A discovery dispute arose relating to plaintiffs' request to explore Wal-Mart's post-accident investigation. Id. The court described that Wal-Mart's investigation of serious accidents involved gathering documents and photographs, which were then forwarded to Wal-Mart's Serious Accident Review ("SAR") committee. Id. Upon review of the material, the committee then issued an opinion finding that the accident was either

-7-

"preventable" or "non-preventable." <u>Id.</u>

During Wal-Mart's corporate deposition, plaintiffs' counsel asked whether Wal-Mart had ever attributed any fault to its driver for the accident. <u>Id.</u> Wal-Mart's counsel instructed the deponent not to answer the question, which prompted plaintiffs to file a motion to compel an answer to the fault-attribution question. <u>Id.</u> In denying plaintiffs' motion to compel, the court noted that plaintiffs' counsel improperly sought protected work product in the form of "a legal conclusion on one of the ultimate issues of the case." <u>Id.</u> at *2. Consequently, the court held that "[a]ny subjective evaluation by Wal-Mart of its *legal* responsibility for the accident (i.e., its failure to maintain some legally mandated standard of conduct) necessarily steps into the mental impressions of the merits of the case." <u>Id.</u> (emphasis in original).

In reaching its decision, the court made clear that had plaintiffs' counsel instead sought unprotected facts uncovered during the investigation or information about the precise criteria used to determine whether the accident could have been prevented, such information would have been discoverable. <u>Id.</u> at *1-2. The court stated, "[w]hile Wal-Mart apparently concedes that its SAR committee assessment was prepared in the ordinary course of business and thus enjoys no special work product protection, the Court is satisfied that plaintiffs' line of questioning as to fault impermissibly sought — through the 30(b)(6) deponent's reasonably expected answers — protected mental impressions prepared in anticipation of litigation." <u>Id.</u> at *2. Consistent with that finding, the court determined that "[i]f the SAR committee applies a uniform methodology in making preventability assessments, that information (the how and why of its methodology) should be discoverable." <u>Id.</u> at *3.

Unlike the plaintiffs in <u>Byrd</u>, plaintiffs have not sought to

-8-

obtain counsel's mental impressions concerning defendants' legal responsibility for the accident. Consistent with Byrd, however, an investigation or preventability determination conducted by defendants in the ordinary course of business is not subject to such protection. See id. at *2; see also Smith v. Marten Transp., Ltd., No. 10-cv-293, 2010 WL 5313537, at *4 (D. Colo. Dec. 17, 2010) (holding that original investigation report was not privileged when produced in the ordinary course of business to investigate multi-car accident involving one of defendant's trucks and drivers); Sajda v. Brewton, 265 F.R.D. 334, 340 (N.D. Ind. 2009) (finding that company's accident report and computer template used to compile accident information were discoverable when generated in the ordinary course of business and forwarding the information to counsel did "not cloak it in attorney-client privilege"); cf. Carlson v. Freightliner LLC, 226 F.R.D. 343, 366 (D. Neb. 2004)(stating that "risk management documents prepared by investigators" are not protected from discovery as privileged, unless they disclose "the individual case reserves for files and any mental impressions, thoughts, and conclusions in evaluating a legal claim"). The record evidence in this case suggests that the information at issue was gathered in the ordinary course of business which, according Mr. Dunn, was then reviewed by "a driver review board. . . ." (Doc. #47, Ex. 2 at 5). The fact that defendants had retained counsel at the time that this information was generated, or that they informed him of the results of the process, does not alter this conclusion. See, e.g., Heavin v. Owens-Corning Fiberglass, No. 02-2572, 2004 WL 316072, at *3 (D. Kansas Feb. 3, 2004) (noting that the attorney-client privilege applies to communications only and not to facts). Plaintiffs may not inquire as to what defendants communicated to counsel, or what advice he gave in response, but they are entitled to discover the facts which the investigation

uncovered and any conclusion reached by defendants' personnel.

The burden of establishing the protection of the attorney-client privilege rests with defendants, and they have failed to satisfy that burden.  Consequently, this Court will not deny plaintiffs discovery pertaining to post-accident investigations and "preventability" determinations.

## IV. Order

For the reasons set forth above, the Court grants plaintiffs' "Motion to Compel Discovery Regarding Preventable Accident Determination/Investigation and Remedial Training/Discipline" (Doc. #47) and denies defendants' "Motion Opposing Plaintiff Chandra Laws' First Set of Interrogatories to Defendant Stevens Transport, Inc. and Motion to Strike Certain 'Areas of Inquiry' Set Forth in Plaintiffs' 30(b)(6) Deposition Notice" (Doc. #46).

## V. Procedure for Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp

-10-

United States Magistrate Judge